United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION BLIZZARD INC.,<br><br>      Plaintiff,<br><br>    v.<br><br>ACCELERATION BAY LLC,<br><br>      Defendant. | Case No.  16-cv-03375-RS; 16-cv-3377-RS; 16-cv-3378-RS<br><br>**ORDER GRANTING MOTIONS TO TRANSFER AND DENYING AS MOOT MOTIONS TO DISMISS** |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., et al.,<br><br>      Plaintiffs,<br><br>    v.<br><br>ACCELERATION BAY LLC,<br><br>      Defendant. | |
| ELECTRONIC ARTS INC.,<br><br>      Plaintiff,<br><br>    v.<br><br>ACCELERATION BAY LLC,<br><br>      Defendant. | |

## I. INTRODUCTION

Plaintiffs Activision Blizzard Inc. ("Activision"), Electronic Arts Inc. ("EA"), Take-Two

Interactive Software, Inc. ("Take-Two"),[1] and defendant Acceleration Bay LLC ("AB") have been

---

[1] Take-Two is comprised of two subsidiary companies, Rockstar Games, Inc. and 2K Sports, Inc. These entities will be referred to collectively as "Take-Two."  Additionally, Activision, EA, and Take-Two will be referred to collectively as the "video game companies."

1    tussling in the District of Delaware over allegations that plaintiffs' video games infringe AB's

2    networking patents.  A little over a year into those proceedings, the video game companies moved

3    to dismiss based on a defect in AB's prudential standing.  The court spotted the same defect but

4    elected to give AB fourteen days to fix it.  Twelve days thereafter, AB announced the problems

5    with prudential standing were resolved, yet sensing opportunity, the video game companies

6    quickly commenced these declaratory actions on the opposite coast.  AB, for its part, in lieu of

7    amending its pleadings, filed new Delaware complaints the next day.  Now, as so often is the case

8    in these patent venue chess games, AB moves to dismiss or transfer these actions back to

9    Delaware.

10           For the reasons explained below, AB's motions to transfer under the first-to-file rule will

11   be granted.  AB's re-filed complaints functionally amended its original 2015 Delaware pleadings,

12   and in any event, the instant matters were filed in anticipation of imminent litigation.  It also is

13   appropriate to defer to the Delaware court's superior familiarity with these proceedings.  As such,

14   these suits will be transferred back to "The First State" where they belong.

### II. BACKGROUND

16           AB is an incubator for next generation businesses, particularly those delivering content in

17   real-time.  Activision, EA, and Take-Two are video game developers and publishers.  The patents-

18   in-suit disclose "Small-world Wide Area Networking ("SWAN")" technology that allegedly

19   implicates multiplayer or multisystem gaming environments.[2]  Lin Decl. Ex. 11.  Fred Holt and

20   Virgil Bourassa, the inventors of the technology, worked at The Boeing Company ("Boeing")

21   when the patents were issued.  *See id.* Ex. 10.

22           Holt and Bourassa established Panthesis Inc. in 2001 to develop and commercialize

23   Boeing's SWAN technology.  *Id.*  They eventually sought to sell or license the patents, and

24   ostensibly came into contact with Sony Entertainment, RPX Corporation, and Acorn

26   [2] The patents-in-suit include U.S. Patent Nos. 6,701,344 ("the '344 patent"), 6,829,634 ("the '634 patent"), 6,732,147 ("the '147 patent"), 6,714,966 ("the '966 patent"), 6,920,497 ("the '497 patent"), and 6,910,069 ("the '069 patent").

United States District Court
Northern District of California

1   Technologies, Inc.  None of these suitors ultimately worked out, but that changed in December

2   2014, when Boeing and AB entered into a "Patent Purchase Agreement."  Through the agreement,

3   AB purportedly acquired all "substantial rights" to the patents, and it commenced suit shortly

4   thereafter against Activision in the District of Delaware on March 11, 2015.  AB sued EA and

5   Take-Two in the same venue on March 30 and April 13, 2015, respectively.  The suits allege

6   infringement of the SWAN patents, which the video game companies reject.

7        The Delaware court related the cases for discovery, claim construction, and pre-trial

8   activities.  Discovery then kicked off in December 2015.  The parties served and responded to 434

9   requests for production and 42 interrogatories, while collectively serving eighteen (18) third-party

10  subpoenas.  Kobialka Reply Decl. ¶ 8.  Over 118,000 pages of documents were produced and the

11  parties held over two dozen days of source code review.  *Id.* ¶ 9.  After twice moving to compel

12  depositions, AB deposed two Activision 30(b)(6) employees.  *Id.* ¶ 7.  Four additional depositions

13  were scheduled to take place, and all depositions were conducted in locations convenient for the

14  witnesses.  *Id.*  AB served initial infringement claim charts on March 2, 2016, and the video game

15  companies served invalidity contentions on May 6, 2016.  *Id.* ¶ 10.  The Delaware court appointed

16  a special master *sua sponte*, and together with the special master held six hearings and issued ten

17  orders covering a range of matters.

18       Through the course of discovery, the video game companies received the "Patent Purchase

19  Agreement," and after reviewing its terms, moved to dismiss based on a defect in prudential

20  standing.  They correspondingly moved to stay proceedings pending the court's decision, which

21  AB opposed, claiming it "may cure any defect in prudential standing."  Lin Decl. Ex. 15.  At the

22  hearing on the motions, AB represented that Boeing was unlikely to join the suits, but noted

23  "prudential standing can be cured in multiple ways.  To join the party and also amending the

24  agreement."  Kobialka Reply Decl. Ex. 1 at 69:21–23.  On June 3, 2016, the court found AB was

25  an "exclusive licensee," and that Boeing did not convey "all substantial rights," giving rise to a

26  defect in prudential standing.  Lin Decl. Ex. 5.  The court accordingly indicated the video game

27  companies' motion to dismiss would be granted "unless Boeing joins this action within 14 days."

28

1    *Id.*

2         Twelve days later, in connection with inter partes review ("IPR") proceedings initiated by

3    the video game companies, AB sent a letter to the Patent Trial and Appeal Board ("PTAB"), with

4    copies to the video game companies.  It informed the PTAB "that subsequent to th[e] [Delaware

5    court's] Order, Acceleration Bay and the Boeing Company entered into an Amended and Restated

6    Patent Purchase Agreement resolving all of the issues identified by the District Court in its June 3,

7    2016 Order."  Lin Decl. Ex. 32.  The very next day, June 16, 2016—one day prior to expiration of

8    AB's fourteen day window—the video game companies filed suit in this Court, seeking

9    declaratory judgments of non-infringement of the SWAN patents.  The complaints invoke the

10   March 2015 Delaware litigation and AB's letter to the PTAB to support the proposition the video

11   game companies have "a reasonable apprehension that [AB] may again commence litigation

12   against [them] on the asserted patents."  Compl. ¶ 14.  The Northern California suits raise the

13   same claims and defenses as the Delaware actions.

14        On June 17, 2016, prior to expiration of the fourteen day window, AB sent the Delaware

15   court a letter to update it on the recent developments.  It reported Boeing would not be joining the

16   pending actions, but said the amended purchase and license agreement "confirm[s] that

17   Acceleration Bay has standing to pursue its claims against the Defendants without Boeing."  Lin

18   Decl. Ex. 16.  AB indicated it would "now" refile complaints against the video game companies,

19   and asked the court to reserve the existing trial dates, "as only minor adjustments to the schedule

20   will be necessary in view of the resolution of this standing issue within two weeks of the Court's

21   Order."  *Id.*  AB also requested the 2015 Delaware actions be dismissed without prejudice.  *Id.*

22   AB refiled its claims against the video game companies in new actions that same day.  Three days

23   later, on June 20, 2016, the Delaware court dismissed without prejudice the March and April 2015

24   actions commenced by AB.  The court also vacated the trial dates and closed the dismissed cases.

25   *See id.* Exs. 17, 18.

26        All of the entities involved in this action are incorporated in the state of Delaware.  Almost

27   all of them, however, also have significant ties to California.  AB maintains its principal place of

28

CASE NO. <u>16-cv-03375-RS</u>

4

United States District Court
Northern District of California

business in Redwood City, California, and its counsel is based in Menlo Park, California. Activision maintains its principal place of business in Santa Monica, California, and all but one of its subsidiaries is also based in this state.  EA, like AB, maintains its principal place of business in Redwood City, California, and Take-Two's subsidiaries operate out of Novato and San Diego.

Holt and Bourassa invented the technology in Boeing's Phantom Works R&D Division. They reside in Washington, but Phantom Works apparently operates in Seal Beach, California. Linda Magnotti, the former CEO of Panthesis, is also located in Washington.  All of the putative patent buyers—Sony, Acorn Inc., and RPX Corporation—are located in California.

The accused products are video games sold throughout the entire United States.  In addition to California, they were developed in Florida, New York, Canada, and Romania.  Some potentially relevant witnesses are located in Illinois and Washington.  In the 2015 actions, third-party subpoenas were served on corporations in Texas and New York.

### III. LEGAL STANDARD

The Declaratory Judgment Act permits courts the discretion to decline jurisdiction over declaratory judgment claims.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); 28 U.S.C. § 2201 ("[A]ny court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added).  Courts routinely do so under the "first-to-file" rule, the "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).  The rule "favors the forum of the first-filed action, whether or not it is a declaratory action," *see Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), in the service of "promot[ing] judicial efficiency and prevent[ing] the risk of inconsistent decisions that would arise from multiple litigations of identical claims," *Interactive Fitness Holdings, LLC v. Icon Health & Fitness, Inc.*, No. 10–CV–04628–LHK, 2011 WL 1302633, at *2 (N.D. Cal. Apr. 5, 2011).  The rule "should not be disregarded lightly."  *Alltrade, Inc. v. Uniwield Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).

CASE NO. 16-cv-03375-RS

1    That said, it is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied

2    with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95.

3          In applying the rule, courts focus primarily on the chronology of the filings, the identity of

4    the parties, and whether the issues presented in the successive actions "substantially overlap."

5    *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2008).

6    The analysis may also encompass consideration of the "convenience factors" set forth in the

7    transfer statute, 28 U.S.C. § 1404(a), including "the convenience and availability of witnesses,

8    absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with

9    related litigation, or considerations relating to the interest of justice." *Micron Tech., Inc. v.*

10   *Mosaid Techs., Inc.*, 518 F.3d 897, 904–05 (Fed. Cir. 2008).

11                                    **IV. DISCUSSION**

12         The parties each lay plausible claim to first-filer status, dispute whether these actions were

13   preemptive, and present disparate but somewhat overlapping "convenience" analyses.  Looking at

14   the undisputed facts, the instant actions were technically first-filed, but the rule is not

15   mechanically applied, and the relation back doctrine counsels in favor of reaching the opposite

16   conclusion.  Specifically, AB's re-filed complaints functionally amended the co-pending 2015

17   Delaware complaints, and the amendments effectively "relate back," such that AB's current

18   Delaware actions appropriately are considered first-filed.  Even if the instant actions were first-

19   filed, transfer would be appropriate because these matters were brought to preempt AB's suits.

20   Lastly, the Delaware court has invested in this litigation, and thus the expeditious administration

21   of justice calls for deference to its superior familiarity with these proceedings.

22         **A. First to File**

23         Courts look to three factors when applying the first-to-file rule: (1) the chronology of the

24   two actions; (2) the similarity of the parties; and (3) the similarity of the issues.  *Alltrade*, 946 F.2d

25   at 625.  Here, the parties, patents, claims, and defenses are identical across the actions.  The only

26   issue is one of chronology.

27         The facts are undisputed: AB filed suit in Delaware in the spring of 2015; the video game

28

United States District Court
Northern District of California

1  companies filed declaratory judgment actions in this Court on June 16, 2016; AB filed new suits in

2  Delaware against the video game companies on June 17, 2016; the Delaware court dismissed the

3  2015 Delaware actions at AB's request on June 20, 2016.

4          The video game companies argue the 2015 Delaware actions cannot be considered first-

5  filed because they are no longer pending, and thus are not concurrent with the California actions.

6  They further insist this Court is the first to obtain federal subject matter jurisdiction because the

7  2015 Delaware actions ultimately were dismissed for a defect in prudential standing.  *See Mentor*

8  *H/S/, Inc. v. Med Device All., Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) ("[T]he issue of whether

9  an exclusive licensee has sufficient rights in a patent to bring suit in its own name is

10  jurisdictional.").  In a technical sense, the video game companies are correct that the California

11  actions are first-filed, given the Delaware actions currently pending were filed on June 17, 2016.

12  The first-to-file rule, however, is "not a rigid or inflexible rule to be mechanically applied, but

13  rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*,

14  678 F.2d at 95.  Mindful of that premise, the 2015 Delaware actions functionally were first-filed,

15  as the circumstances are akin to those implicating Rule 15's relation back doctrine.[3]

16          Pursuant to that doctrine, "[a]n action is considered to have been the first filed, even if it

17  was not chronologically first, if the claims relate back to an original complaint that was

18  chronologically filed first." *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-07-06222 RMW, 2008 WL

19  1991094, at *2 (N.D. Cal. May 5, 2008).  *Schering Corporation v. Amgen Inc.* is instructive for

20  present purposes.  969 F. Supp. 258 (D. Del. 1997).  There, the patent holder, Schering, brought

21  suit in Delaware alleging patent infringement, and shortly thereafter, defendant Amgen

22  commenced a declaratory judgment proceeding in California.  *Id.* at 262.  Amgen then moved to

23  dismiss the Delaware action alleging a defect in prudential standing, and Schering subsequently

24  amended the Delaware complaint to join the necessary party.  *Id.*  The court found it acquired

25

26  _____

27  [3] To be clear, the relation back doctrine, strictly construed, may not technically apply, but the
present circumstances warrant the same result its application would dictate.

28

United States District Court
Northern District of California

CASE NO. 16-cv-03375-RS

United States District Court
Northern District of California

1   federal subject matter jurisdiction on the date of the *original* complaint because the claims arose

2   under a federal statute and Schering met *constitutional* standing requirements, even if it failed to

3   meet prudential limitations.  *Id.* at 266.  More importantly, the court indicated Schering's

4   amendment related back to the original complaint for purposes of the first-to-file rule because

5   there was no evidence Schering's belief as to the validity of the original assignment was "anything

6   but in good-faith."  *Id.* at 267–68.   As a result, the court applied the date of the original complaint

7   to determine which action was first-filed.  *Id.* at 267–68.

8        Here, AB met constitutional standing requirements in the 2015 Delaware actions,[4] but the

9   video game companies object to applying the "relation back" doctrine because AB re-filed

10  complaints, as opposed to amending pre-existing complaints.  The re-filed complaints, however,

11  did not introduce any new parties, patents, products, or claims, and the circumstances suggest the

12  mistake as to the legal effectiveness of Boeing's original assignment was made in good faith.  As

13  such, the re-filed complaints functionally were equivalent to amendments of the co-pending 2015

14  complaints, as they were filed within the two-week window to cure the specific prudential

15  standing issues identified in the Delaware court's order.  Lastly, the district court dismissed the

16  original complaints without prejudice at AB's request.  AB will not be precluded from "relating

17  back" to the original complaints for purposes of the first-to-file rule on this particular record.

18        *Adobe Systems Incorporated v. Bargain Software Shop, LLC* reinforces this conclusion.

19  No. C–14–3721 EMC, 2014 WL 6982515 (N.D. Cal. Dec. 8, 2014).  There, the court dismissed

20  Adobe's initial action "on a technical procedural ground without prejudice to Adobe refiling the

21  action without misjoined parties."  *Id.* at *2.  Adobe was then sued in Texas, but later re-filed its

22  action in the original court after settlement negotiations broke down.  *Id.*  The court acknowledged

23

24  [4] Under *Schering*, the Delaware court thus acquired subject matter jurisdiction, though that finding
     is not necessarily crucial to application of the first-to-file rule.  *See Hilton v. Apple Inc.*, No. C–
25  13–2167 EMC, 2013 WL 5487317, at *4 (N.D. Cal. Oct. 1, 2013) (finding state court had
     jurisdiction for purposes of the first-to-file rule even though federal court later dismissed removed
26  action without prejudice based on lack of standing); *Cadle Co. v. Whataburger of Alice, Inc.*, 174
     F.3d 599, 604 (5th Cir. 1999) (rejecting argument that district court must find proper jurisdiction
27  in the first-filed court before applying the first-to-file rule).

28

CASE NO. 16-cv-03375-RS

United States District Court
Northern District of California

1  the Texas action technically preceded Adobe's re-filed suit, but found the re-filed matter was the

2  earlier filed action based on the "dictates of sound judicial administration." *Id.* (quoting

3  *Pacesetter*, 678 F.2d at 95).

4      The video game companies invoke *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F.

5  Supp. 2d 1289 (N.D. Cal. 2013), and *ASUSTeK Computer Inc. v. AFTG-TG LLC*, No. 5:CV 11–

6  00192–EJD, 2011 WL 6845791 (N.D. Cal. Dec. 29, 2011), but neither authority is factually on

7  point. *Wallerstein* and *ASUSTeK* do not address the relation back doctrine or the situation where

8  dismissal of the initial actions is granted in favor of virtually identical filings already pending

9  before the same court.

10     In sum, AB's re-filed complaints functionally amended the co-pending 2015 Delaware

11  complaints, and the amendments effectively relate back to the original pleadings, such that AB's

12  current Delaware actions were first-filed.  As the parties and issues are also the same, transfer of

13  the Northern California actions is warranted under the first-to-file rule.

14     **B. Other Considerations**

15     As detailed above, the first-to-file rule encompasses the transfer statute's convenience

16  factors.[5]  These include the "convenience and availability of witnesses, absence of jurisdiction

17  over all necessary or desirable parties, possibility of consolidation with related litigation, [and]

18  considerations relating to the interest of justice." *Micron Tech.*, 518 F.3d at 904–05.  The "general

19  rule favors the forum of the first-filed action," but the Federal Circuit has recognized "trial courts

20  have discretion to make exceptions to this general rule in the interest of justice or expediency, as

21  in any issue of choice of forum." *Id.* at 904 (citing *Genentech*, 998 F.2d at 937).

---

[5] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  The parties do not dispute this case could have been brought in either venue.  *See Glaxo Group Ltd. v. Genentech, Inc.*, No. C 10-00675, 2010 WL 1445666, at *2 (N.D. Cal. Apr. 12, 2010) (movant must show that the transferee court is one in which the original action could have been brought).

*1. Anticipation of Imminent Litigation Exception*

Even if the instant actions had been first-filed, an exception to the rule effectively exists for improper anticipatory suits, *Alltrade*, 946 F.2d at 628, though this consideration is "merely one factor" in the overall analysis, *Micron*, 518 F.3d at 904. "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). In making that assessment, courts may consider "all of the circumstances and the totality of the correspondence between the parties." *Kan. Int'l Ltd. v. Brian Moore Custom Guitars, Inc.*, No. C 08-3120 PJH, 2008 WL 4225450, at *1 (N.D. Cal. Sept. 12, 2008).

The video game companies contend they sought declaratory judgments upon learning AB rightfully owned the patents, and they submit their suits were prompted by "significant uncertainty" because the Delaware court "did not impose any obligation on Acceleration Bay at all and certainly did not set a deadline for filing new suits." Opp'n at 15:3–5, 16 n.16. These arguments ring hollow. AB did not render the video game companies immobile by some purported refusal to grasp the nettle and sue. *See Micron*, 518 F.3d at 902. To the contrary, they *already* had been sued and were litigating these patents in Delaware for almost fourteen months. Not just that, the video game companies contend AB was formed to acquire and assert the specific patents-in-suit, Opp'n at 3:18–21, and they filed the instant actions only after learning the problems with the pending Delaware actions had been resolved.

As detailed above, AB conveyed repeatedly it would cure any problems with prudential standing, *see* Lin Decl. Ex. 15; Kobialka Reply Decl. Ex. 1 at 69:21–23, and it specifically told the video game companies "that subsequent to th[e] [Delaware court's] Order, Acceleration Bay and the Boeing Company entered into an Amended and Restated Patent Purchase Agreement *resolving all of the issues* identified by the District Court." Lin Decl. Ex. 32 (emphasis added). Knowing full well the parties had invested millions in litigation still pending on the opposite coast, the video game companies only then commenced the instant actions, asserting the controversies were "immediate." Compl. ¶ 15.

CASE NO. 16-cv-03375-RS

United States District Court
Northern District of California

1   These actions smack of gamesmanship, and hardly resemble the authorities the video game

2   companies invoke.  For instance, in *Barnes & Noble, Inc. v. LSI Corporation*, 823 F. Supp. 2d 980

3   (2011), Barnes & Noble ("BN") received a letter from the defendant contending BN was

4   infringing some of its patents.  *Id.* at 982.  The parties then "engaged in good faith negotiations"

5   and "rather than attend their next-scheduled meeting, BN filed suit."  *Id.* at 991.  Those

6   circumstances align much more closely with the purpose of the Declaratory Judgment Act in

7   patent cases—"to provide the allegedly infringing party relief from uncertainty and delay

8   regarding its legal rights."  *Micron*, 518 F.3d at 902.  The same can be said of *Royal Queentex*

9   *Enterprises v. Sara Lee Corporation*.  No. C–99–4787 MJJ, 2000 WL 246599, at *5 (N.D. Cal.

10  Mar. 1, 2000).  There, the defendant's letter merely stated it was "willing to forego legal action to

11  enforce its rights only if [it] receive[d] prompt written assurances" from the plaintiff.[6]  *Id.* at *5.

12  In neither of these cases were the parties engaged in *pending* litigation, to say nothing of the

13  circumstance where one party had two-weeks to fix a problem, and only upon learning of the

14  remedy, did the opposing party sue.  That the video game companies filed suit in anticipation of

15  litigation on its own is not sufficient to warrant transfer.  *Elecs. for Imaging, Inc. v. Coyle*, 394

16  F.3d 1341, 1347–48 (Fed. Cir. 2005).  This factor nonetheless favors transfer or dismissal of the

17  instant actions.

18              *2. Interests of Justice*

19   Analyzing the interests of justice entails an inquiry into "whether efficient and expeditious

20  administration of justice would be furthered" by transfer.  *Sherar v. Harless*, 561 F.2d 791, 794

21  (9th Cir. 1977); *accord Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed.

22  Cir. 1997).  Matters of judicial economy "may be determinative to a particular transfer motion,

23  even if the convenience of the parties and witnesses might call for a different result."  *Regents*,

24

25  ─────────────────────

26  [6] In *Diablo Technologies, Inc. v. Netlist, Inc.*, No. 13–CV–3901–YGR, 2013 WL 5609321 (N.D.
    Cal. Oct. 11, 2013), another case upon which the video game companies rely, the court agreed the
27  declaratory judgment action was anticipatory but found that sole factor did not warrant transfer in
    light of additional considerations of judicial efficiency.  The same cannot be said here.

28

CASE NO. 16-cv-03375-RS

11

1    119 F.3d at 1565 (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986)).

2    Thus, in patent litigation "in which several highly technical factual issues are presented and the

3    other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a

4    court that has become familiar with the issues." *Id.*

5         Here, the expeditious administration of justice calls for deference to the Delaware court.

6    To be sure, the 2015 Delaware actions had not progressed to claim construction or trial.  The

7    district judge and special master, however, held six hearings and issued ten orders covering

8    scheduling, source code, infringement contentions, third party discovery, depositions,

9    interrogatories, testing data, and standing.  The transcripts indicate the hearings involved

10   demonstrations of the accused products, *see, e.g.*, Kobialka Reply Decl. Ex. 1, and relatively

11   substantive discussions of the implicated technologies, *see, e.g.*, *id.* Ex. 6.  As the Delaware court

12   has acquired superior familiarity with the parties, patents, claims, and defenses, the interests of

13   justice support transfer of the instant cases.

                    *3. Additional Convenience Factors*

14

15        Other factors to consider include "(1) plaintiff's choice of forum, (2) convenience of the

16   parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each

17   forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local

18   interest in the controversy, and (8) the relative court congestion and time of trial in each forum."

19   *Finjan, Inc. v. Sophos Inc.*, No. 14-cv-01197-WHO, 2014 WL 2854490, at *2 (N.D. Cal. June 20,

20   2014).  These additional considerations are mostly a wash, but in light of the above discussion, the

21   overall balance of the factors favors transferring these actions.

22        To start, the video game companies' choice of forum is accorded little deference because

23   the suits were filed in anticipation of imminent litigation.  *Royal Queentex*, 2000 WL 246599 at

24   *3.  Both sides have headquarters or significant operations in this district, but all parties involved

25   chose to incorporate in Delaware.  Each district is close to a subset of potentially relevant

26   witnesses, though the video game companies have identified certain parties that allegedly lay

27   beyond the subpoena power of the Delaware court.  This district is closer to three of the locations

28

United States District Court
Northern District of California

CASE NO. 16-cv-03375-RS

12

1  where the video games were developed, but Delaware is closer to the other three development

2  locations.  The parties expect to cooperate to make use of extant discovery, and all previous

3  depositions were scheduled in locations convenient for the witnesses.  Both forums are familiar

4  with the applicable law, and there are no current consolidation issues.  The games are sold

5  throughout the country, and each district can claim the parties, so California and Delaware both

6  have an interest in the controversy.  Lastly, Delaware has more patent cases, but the median time

7  to trial in those actions is three months longer here.  In sum, neither forum provides a clear

8  advantage with respect to these additional considerations.  Yet taking everything into account, the

9  balance of the considerations clearly supports transfer.

10                                       **V. CONCLUSION**

11         At the end of the day, AB's re-filed complaints functionally amended its original Delaware

12  pleadings, and in any event, the instant matters were filed in anticipation of imminent litigation.  It

13  also is appropriate to defer to the Delaware court's superior familiarity with these proceedings.

14  Accordingly, as AB has not provided any compelling reason to dismiss the instant actions, its

15  motions to transfer to the District of Delaware will be granted.  The corresponding motions to

16  dismiss are denied as moot.

17

18  **IT IS SO ORDERED**.

19

20  Dated: September 1, 2016

21                                                                              _____

22                                                                              RICHARD SEEBORG
                                                                                United States District Judge

23

24

25

26

27

28

*United States District Court*
*Northern District of California*

CASE NO. 16-cv-03375-RS